## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLIAMSPORT REGIONAL MEDICAL CENTER
1205 Grampian Blvd., 2nd Floor
Williamsport, PA  17701

SOLDIERS & SAILORS MEMORIAL HOSPITAL
418 Main Street
Penn Yan, NY  14527

INNOVIS HEALTH, LLC ESSENTIA HEALTH
FARGO d/b/a INNOVIS HOSPITAL
3000 32nd Avenue South
Fargo, ND  58103

SMDC MEDICAL CENTER
ESSENTIA HEALTH DULUTH d/b/a
SMDC MEDICAL CENTER
615 Pecan Avenue
Duluth, MN  55811

ST. JOSEPH'S MEDICAL CENTER
5423 N. 3rd Street
Brainerd, MN  56401

ST. MARY'S MEDICAL CENTER
330 E. 2nd Street
Duluth, MN  55805

ST. MARY'S REGIONAL HEALTH CENTER
1027 Washington Avenue
Detroit Lakes, MN  56501

ESSENTIA HEALTH VIRGINIA, LLC, d/b/a
VIRGINIA REGIONAL MEDICAL CENTER
901 9th Street N.
Virginia, MN  55792

SUTTER EAST BAY HOSPITALS d/b/a
ALTA BATES SUMMIT MEDICAL CENTER –
ALTA BATES CAMPUS
2450 Ashby Avenue
Berkeley, CA 94705

Civil Action No.

2697.013-2065558.1

SUTTER WEST BAY HOSPITALS d/b/a
CALIFORNIA PACIFIC MEDICAL CENTER –
PACIFIC CAMPUS
2333 Buchanan Street
San Francisco, CA 94115

SUTTER WEST BAY HOSPITALS d/b/a
CALIFORNIA PACIFIC MEDICAL CENTER –
DAVIES CAMPUS SNF
45 Castro Street
San Francisco, CA  94114

SUTTER WEST BAY HOSPITALS d/b/a
CALIFORNIA PACIFIC MEDICAL CENTER – ST.
LUKES CAMPUS HOSPITAL
3555 Cesar Chavez
San Francisco, CA  94110

MENLO PARK HOSPITAL
570 Willow Road
Menlo Park, CA 94025

SUTTER CENTRAL VALLEY HOSPITALS d/b/a
MEMORIAL HOSPITAL LOS BANOS
520 W. I Street
Los Banos, CA  93635

SUTTER CENTRAL VALLEY HOSPITALS d/b/a
MEMORIAL MEDICAL CENTER
1700 Coffee Road
Modesto, CA  95355

MILLS-PENINSULA HEALTH SERVICES
1501 Trousdale Drive
Burlingame, CA  94010

SUTTER WEST BAY HOSPITALS d/b/a
NOVATO COMMUNITY HOSPITAL
180 Rowland Way
Novato, CA  94945

SUTTER EAST BAY HOSPITALS d/b/a/
ALTA BATES SUMMIT MEDICAL CENTER -
SUMMIT CAMPUS
350 Hawthorne Avenue
Oakland, CA  94609

2697.013-2065558.1

SUTTER HEALTH SACRAMENTO SIERRA
REGION d/b/a SUTTER AMADOR HOSPITAL
200 Mission Blvd.
Jackson, CA  95642

SUTTER HEALTH SACRAMENTO SIERRA
REGION d/b/a SUTTER AUBURN FAITH
HOSPITAL
11815 Education Street
Auburn, CA  95602

SUTTER COAST HEALTH CENTER d/b/a
SUTTER COAST HOSPITAL
785 E. Washington Blvd., Suite 10
Crescent City, CA  95531

SUTTER HEALTH SACRAMENTO SIERRA
REGION d/b/a SUTTER DAVIS HOSPITAL
2000 Sutter Place
Davis, CA  95616

SUTTER EAST BAY HOSPITALS d/b/a
SUTTER DELTA MEDICAL CENTER
3901 Lone Tree Way
Antioch,  CA  94509

SUTTER MATERNITY & SURGERY HOSPITAL
2900 Chanticleer Avenue
Santa Cruz, CA 95065

SUTTER MEDICAL CENTER SACRAMENTO
d/b/a SUTTER MEMORIAL HOSPITAL
2825 Capitol Avenue
Sacramento, CA

SUTTER MEDICAL CENTER OF SANTA ROSA
3325 Chanate Road
Santa Rosa, CA  95404

SUTTER HEALTH SACRAMENTO
SIERRA REGION  d/b/a
SUTTER ROSEVILLE MEDICAL CENTER
1 Medical Center Plaza Drive
Roseville, CA 95661

2697.013-2065558.1

SUTTER HEALTH SACRAMENTO
SIERRA REGION d/b/a
SUTTER SOLANO MEDICAL CENTER
300 Hospital Drive
Vallejo, CA  94589

SUTTER TRACY COMMUNITY HOSPITAL
1420 N. Tracy Blvd.
Tracy, CA  95376

COVENANT MEDICAL CENTER LAKESIDE
4000 24th Street
Lubbock, TX  79410

COVENANT HOSPITAL LEVELLAND
1900 College Ave
Levelland, TX 79336

COVENANT HOSPITAL PLAINVIEW
2601 Dimmit Road
Plainview, TX 79072

COVENANT MEDICAL CENTER
3615 19th Street
Lubbock, TX 79410

HOAG MEMORIAL HOSPITAL PRESBYTERIAN
One Hoag Drive
Newport Beach, CA 92663

MISSION HOSPITAL REGIONAL MEDICAL
CENTER
27700 Medical Center Road
Mission Viejo, CA 92691

PETALUMA VALLEY HOSPITAL
400 N. McDowell Blvd.
Petaluma, CA  95954

QUEEN OF THE VALLEY MEDICAL CENTER aka
QUEEN OF THE VALLEY HOSPITAL
1000 Trancas Street
Napa, CA  94558

2697.013-2065558.1

ST. JOSEPH HOSPITAL EUREKA
38883 Highway 299
Willow Creek, CA  95573

ST. JOSEPH HOSPITAL OF ORANGE
1100 W. Stewart Drive
Orange, CA  92821

ST. JUDE HOSPITAL, INC. dba
ST. JUDE  MEDICAL CENTER
101 E Valencia Mesa Drive
Fullerton, CA 92835

ST. MARY MEDICAL CENTER
18300 U.S. Highway 18
Apple Valley, CA  92307

ALAMEDA COUNTY MEDICAL CENTER
1141 East 31st Street
Oakland, CA 94602

CHINESE HOSPITAL ASSOCIATION
dba CHINESE HOSPITAL
845 Jackson Street
San Francisco, CA 94133

COMMUNITY HOSPITAL OF
THE MONTEREY PENINSULA
23625 Holman Highway
Monterey, CA 93940

DAVIS MEDICAL CENTER
812 Gorman Avenue
Elkins, WV  26241

DOCTOR'S MEDICAL CENTER SAN PABLO d/b/a
DOCTOR'S HOSPITAL OF SAN PABLO
2000 Vale Road
San Pablo, CA  94806

EL CAMINO HOSPITAL
2500 Grant Road
Mountain View, CA 94040

2697.013-2065558.1

ENLOE MEDICAL CENTER
1531 Esplanade
Chico, CA 95926

MADERA COMMUNITY HOSPITAL
1250 E. Almond Avenue
Madera, CA 93637

NORTHBAY MEDICAL CENTER
1200 B. Gale Wilson Blvd.
Fairfield, CA 94533

SAN FRANCISCO GENERAL HOSPITAL
MEDICAL & TRAUMA CENTER d/b/a
SAN FRANCISCO GENERAL HOSPITAL
1001 Potrero Avenue
San Francisco, CA 94110

SANTA CLARA VALLEY MEDICAL CENTER
751 S. Bascom Avenue
San Jose, CA 95128

STANFORD HOSPITAL & CLINICS
300 Pasteur Drive
Stanford, CA 94305

JOHN MUIR MEDICAL CENTER CONCORD
2540 East Street
Concord, CA  94520

JOHN MUIR MEDICAL CENTER WALNUT
CREEK
1400 Treat Blvd.
Walnut Creek, CA  94597

     Plaintiffs,
  v.

SYLVIA MATHEWS BURWELL, SECRETARY OF
THE UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

     Defendant.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR SUMS
DUE UNDER THE MEDICARE ACT**

2697.013-2065558.1

## INTRODUCTION

1.      This is an action for judicial review of a final determination of the Secretary of the Department of Health and Human Services ("Secretary") to implement an across-the-board reduction of Medicare payment rates for inpatient services furnished by general acute care hospitals. This final determination applies to inpatient hospital services provided on and after October 1, 2013, and will have the continuing effect of improperly reducing Medicare payments to hospitals thereafter.

2.      Specifically, the Secretary used procedurally and substantively flawed rulemaking to create a rule during Federal fiscal year ("FFY") 2014 that narrowed the definition of inpatient hospital services by requiring a longer expected inpatient stay at the time of admission. At the same time, the Secretary wrongly estimated that this new rule would result in a net increase in the number of covered inpatient hospital stays. 78 Fed. Reg. 50,496; 50,938-52; 50.965 (August 19, 2013). The Secretary did not provide substantial evidence nor did she provide an adequate explanation of grounds for reaching such a counter-intuitive conclusion.

3.      That flawed rule included the implementation of a 0.2% reduction to the Medicare Inpatient Prospective Payment System ("IPPS") for inpatient discharges at all IPPS hospitals occurring on and after October 1, 2013, including Providers, to offset the purported increase in covered inpatient hospitals stays that was estimated to occur. *Id.*

4.      The following year, the Secretary did not reverse or address the 0.2% reduction challenged by hospitals and the improper reduction carried forward to IPPS rates for FFY 2015 through the FFY 2015 IPPS Final Rule. 79 Fed Reg. 49,854; 50,381-83 (Aug. 22, 2014); *see also Cape Code Hosp. v. Sebelius,* 630 F.3d 203, 213-14 (D.C. Cir. 2011) (discussing that Medicare IPPS rates per discharge are calculated by carrying forward the previous fiscal year's amount).

2697.013-2065558.1

5.      Plaintiff hospitals now seek an order setting aside the provisions of the Secretary's FFY 2015 Final Rule. The Secretary's actions are substantively and procedurally improper under the law. The across-the-board rate reduction conflicts with the plain meaning and intent of the Medicare Act; the Secretary has no valid statutory authority to implement the rate cut; and the Secretary failed to provide sufficient support for her actions. Furthermore, the Secretary's actions are arbitrary, capricious, an abuse of discretion, and unsupported by necessary evidence. 5 U.S.C. § 706.

## JURISDICTION AND VENUE

6.      This is a civil action arising under the Medicare Act (Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*) ("Medicare Act") and the Administrative Procedures Act (5 U.S.C. § 701, *et seq.*) ("APA").

7.      Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(1).

8.      Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1). This is a civil action arising under the Medicare Act (Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*) and the Administrative Procedures Act (5 U.S.C. § 701, *et seq.*) to obtain judicial review of actions by defendant Sylvia Mathews Burwell, Secretary of the United States Department of Health and Human Services ("HHS"), and the actions of the Secretary's agent, the Medicare Administrative Contractor, which resulted in Plaintiffs receiving improper payments under the Medicare PPS in FFY 2015.

## PARTIES

9.      During the fiscal period at issue in this action, Plaintiffs were licensed and qualified providers of hospital services under the federal Medicare program pursuant to Title XVIII of the Social Security Act, 42 U.S.C. Section 1395 *et seq.* The plaintiff hospitals are:

- 8 -

a. Williamsport Regional Medical Center, Medicare provider number 39-0045;

b. Soldiers & Sailors Memorial Hospital, Medicare provider number, 39-0043;

c. Innovis Health, LLC Essentia Health Fargo doing business as Innovis Hospital, Medicare provider number, 35-0070;

d. SMDC Medical Center Essentia Health Duluth doing business as SMDC Medical Center, Medicare provider number, 24-0019;

e. St. Joseph's Medical Center, Medicare provider number, 24-0075;

f. St. Mary's Medical Center, Medicare provider number, 24-0002;

g. St. Mary's Regional Health Center, Medicare provider number, 24-0101;

h. Essentia Health Virginia, LLC doing business as Virginia Regional Medical Center, Medicare provider number, 24-0084;

i. Sutter East Bay Hospitals doing business as Alta Bates Summit Medical Center – Alta Bates Campus, Medicare provider number, 05-0305;

j. Sutter West Bay Hospitals doing business as California Pacific Medical Center – Pacific Campus, Medicare provider number, 05-0047;

k. Sutter West Bay Hospitals doing business as California Pacific Medical Center – Davies Campus SNF, Medicare provider number, 05-0008;

l. Sutter West Bay Hospitals doing business as California Pacific Medical Center – St. Luke's Campus Hospital, Medicare provider number, 05-0055;

m. Menlo Park Hospital, Medicare provider number, 05-0754;

n. Sutter Central Valley Hospitals doing business as Memorial Hospital Los Banos, Medicare provider number, 05-0528;

o.      Sutter Central Valley Hospitals doing business as Memorial Medical Center,

Medicare provider number, 05-0557;

p.      Mills-Peninsula Health Services, Medicare provider number, 05-0007;

q.      Sutter West Bay Hospitals doing business as Novato Community Hospital,

Medicare provider number, 05-0131;

r.      Sutter East Bay Hospitals doing business as Alta Bates Summit Medical Center -

Summit Campus, Medicare provider number, 05-0043;

s.      Sutter Health Sacramento Sierra Region doing business as Sutter Amador

Hospital, Medicare provider number, 05-0014;

t.      Sutter Health Sacramento Sierra Region doing business as Sutter Auburn Faith

Hospital, Medicare provider number, 05-0498;

u.      Sutter Coast Health Center doing business as Sutter Coast Hospital, Medicare

provider number, 05-0417;

v.      Sutter Health Sacramento Sierra Region doing business as Sutter Davis Hospital,

Medicare provider number, 05-0537;

w.      Sutter East Bay Hospitals doing business as Sutter Delta Medical Center,

Medicare provider number, 05-0523;

x.      Sutter Maternity & Surgery Hospital, Santa Cruz, Medicare provider number, 05-

0714;

y.      Sutter Medical Center Sacramento doing business as Sutter Memorial Hospital,

Medicare provider number, 05-0108;

z.      Sutter Medical Center of Santa Rosa, Medicare provider number, 05-0291;

aa.     Sutter Health Sacramento Sierra Region doing business as Sutter Roseville Medical Center, Medicare provider number, 05-0309;

bb.     Sutter Health Sacramento Sierra Region doing business as Sutter Solano Medical Center, Medicare provider number, 05-0101;

cc.     Sutter Tracy Community Hospital, Medicare provider number, 05-0313;

dd.     Covenant Medical Center Lakeside, Medicare provider number, 45-0040;

ee.     Covenant Medical Center Levelland, Medicare provider number, 45-0755;

ff.     Covenant Medical Center Plainview, Medicare provider number, 45-0539;

gg.     Covenant Medical Center Lubbock, Medicare provider number, 45-0457;

hh.     Hoag Memorial Hospital Presbyterian, Medicare provider number, 05-0224;

ii.     Mission Hospital Regional Medical Center, Medicare provider number, 05-0567;

jj.     Petaluma Valley Hospital, Medicare provider number, 05-0136;

kk.     Queen of the Valley Medical Center also known as Queen of the Valley Hospital, Medicare provider number, 05-0009;

ll.     St. Joseph Hospital Eureka, Medicare provider number, 05-0006;

mm.     St. Joseph Hospital of Orange, Medicare provider number, 05-0069;

nn.     St. Jude Hospital, Inc. doing business as St. Jude Medical Center, Medicare provider number, 05-0168;

oo.     St. Mary Medical Center, Medicare provider number, 05-0300;

pp.     Alameda County Medical Center, Medicare provider number, 05-0320;

qq.     Chinese Hospital Association doing business as Chinese Hospital, Medicare provider number, 05-0407;

2697.013-2065558.1

rr.     Community Hospital of the Monterey Peninsula, Medicare provider number, 05-0145;

ss.     Davis Medical Center doing business as Davis Memorial Hospital, Medicare provider number, 51-0030;

tt.     Doctor's Medical Center - San Pablo doing business as Doctor's Hospital of San Pablo, Medicare provider number, 05-0079;

uu.     El Camino Hospital, Medicare provider number, 05-0308;

vv.     Enloe Medical Center, Medicare provider number, 05-0039;

ww.     Madera Community Hospital, Medicare provider number, 05-0568;

xx.     NorthBay Medical Center, Medicare provider number, 05-0367;

yy.     San Francisco General Hospital Medical & Trauma Center doing business as San Francisco General Hospital, Medicare provider number, 05-0228;

zz.     Santa Clara Valley Medical Center, Medicare provider number, 05-0038;

aaa.     Stanford Hospital & Clinics, Medicare provider number, 05-0441;

bbb.     John Muir Medical Center Concord, Medicare provider number, 05-0496;

ccc.     John Muir Medical Center Walnut Creek, Medicare provider number, 05-0180;

10.     Defendant Sylvia Mathews Burwell (the "Secretary") is the Secretary of HHS and is sued in her official capacity. Defendant's department is responsible for administration of the Medicare program, and Defendant exercises the administrative responsibility of the Medicare program primarily through the Centers for Medicare & Medicaid Services (sometimes referred to herein as "CMS"), an agency of HHS. References to the Secretary herein are meant to refer to her, her subordinate agencies and officials, and to her official predecessors or successors as the context requires.

## STATUTORY AND REGULATORY BACKGROUND

### A.  Medicare Program

11.     The Medicare Act establishes a system of health insurance for the aged, blind, and disabled under title XVIII of the Act.  42 U.S.C. § 1395 *et seq*.  Though the Medicare Act consists of five parts, only Part A and Part B are relevant to the instant action. Part A covers inpatient hospital services, and Part B covers outpatient hospital services. 42 U.S.C. §§ 1395d(a)(1) and §§ 1395k(a)(2)(B).

12.     The Medicare program is federally funded and is administered by the Secretary through CMS and its contractors.  42 U.S.C. § 1395kk; 42 Fed. Reg. 13,202 (Mar. 9, 1977).  CMS pays providers participating under the Medicare program for covered services rendered to Medicare beneficiaries by contracting with private organizations, usually insurance companies. 42 U.S.C. § 1395h. These Medicare Administrative Contractors ("MAC") act as agents of the Secretary and determine the amount of payment to a Medicare provider.

13.     CMS, through MACs, issues a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the cost reporting period in compliance with law.

14.     In addition to MACs, the Secretary also contracts with Recovery Audit Contractors ("RAC") who review hospital claims that have already been paid by the MACs. When these post-payment reviews result in CMS recouping Medicare payments from hospitals, the RACs receive a percentage of that recoupment from the Secretary.  The RACs are not contracted to identify hospital claims that resulted in an improper underpayment from the MACs.

2697.013-2065558.1

**B.  Prospective Payment System; Part A – Inpatient Services**

15.      Until 1983, Medicare reimbursed hospitals for the "reasonable cost" of inpatient

hospital services furnished to Medicare patients.  42 U.S.C. § 1395f(b); *see also Washington*

*Hosp. Ctr. v. Bowen*, 795 F.2d 139, 141 (D.C. Cir. 1986).

16.      The Social Security Amendments of 1983 instituted a new prospective payment

system ("IPPS") for the operating costs of inpatient hospital services.  Social Security

Amendments of 1983, Pub. L. No. 98-21, § 601.  *See Georgetown University Hosp.* v. *Bowen*,

862 F.2d 323, 324 (D.C. Cir. 1988).

17.      Under IPPS, Medicare pays prospectively-established rates for each inpatient

discharge.  The IPPS payment is based on a base payment rate per discharge, called the

standardized amount; a wage index value that is applied for each hospital to the labor-related

share of the standardized amount; and a weighing factor determined by the Secretary for the

diagnosis-related group ("DRG") assigned to the patient's illness or condition.  42. U.S.C. §

1395ww(d); 42 C.F.R. § 412; *Cape Cod Hosp. v. Sebelius*, 630 F. 3d 203, 205 (D.C. Cir. 2011).

18.      The "standardized amount" is calculated based on a precise calculation prescribed

under statute, which mandates that the rate for a Federal fiscal year "is equal to" an amount

calculated by the Secretary based on specifically defined determinations that the Secretary is to

make. 42 U.S.C. §§ 1395ww(d)(1), (3).

19.      Medicare participating hospitals may be eligible for certain supplemental payment

adjustments and exceptions beyond the basic DRG-based payments that are available under

IPPS. These add-ons are for particular categories of hospitals that reasonably incur higher than

average costs per case. 42 U.S.C. § 1395ww(d)(5). These include, but are not limited to,

payments for direct and indirect costs related to training medical residents (Direct Graduate

2697.013-2065558.1

Medical Education, or "DGME" costs, and Indirect Graduate Medical Education, or "IGME" costs); upward percentage adjustments to payments per discharge to hospitals that treat a disproportionate share of low-income patients; payment adjustments for beneficiaries' non-payment of co-payments, or bad debts; payment adjustments for volume decreases for hospitals in certain situations; and payment adjustments for extremely costly cases, or outlier payments.

20.     Some hospitals, like sole-community or Medicare-dependent hospitals, are excepted from the standard payment rate under the statute, and they may receive payment at a higher rate based in whole or in part on the hospitals' own cost per discharge, or a hospital-specific rate. 42 U.S.C. §§ 1395ww(d)(5)(D), (G); *see also* 42 C.F.R. §§ 412.92, 412.79.

21.     Under the statute, the Secretary also has authority to establish other appropriate adjustments and exceptions by promulgating regulations. 42 U.S.C. § 1395ww(d)(5)(1). Congress granted the Secretary this authority for the purposes of ensuring payment equity under the IPPS for hospitals with special circumstances or for special cases. H.R. Rep. No. 98-47 (1983).

**C.  Prospective Payment System; Part B – Outpatient Services**

22.     Part B of the Medicare program covers various "medical and other health services" not covered by Part A, including hospital outpatient services. In 2000, CMS implemented the outpatient prospective payment system ("OPPS"), using the authority granted to CMS by Congress in the Balanced Budget Act of 1997. Payment to hospitals under the OPPS is similar to the IPPS but is usually based on the ambulatory payment classification ("APC") of the service provided, which is the outpatient counterpart of the inpatient DRG. 42 U.S.C. § 419.031.

2697.013-2065558.1

**D.  Medicare Appeals Process**

23.    A hospital has a right to obtain a hearing before the Provider Reimbursement Review Board ("PRRB") if the provider "is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1886" of the Medicare Act.  (*See* 42 U.S.C. § 1395oo(a)(1)(A)(2)).

24.    If the PRRB has jurisdiction over the hospital's appeal, but the appeal involves a question of law that the PRRB is without authority to decide, the PRRB may, through its own motion or upon request from the provider, grant expedited judicial review ("EJR") of the appeal. 42 U.S.C. § 1395oo(f)(1). If an EJR is granted, a provider may seek judicial review of the Secretary's final determination without first having a PRRB hearing. *Id.* The provider has 60 days from the date on which it receives notification of the Board's determination to commence a civil action in this Court.

25.    The PRRB is required to comply with all policies issued by the Secretary under the Social Security Act. *See* 42 C.F.R. § 405.1867; *Sarasota Memorial Hosp. v. Shalala*, 60 F.3d 1507, 1509-10 (11th Cir. 1995).

**E.  Two-Midnight Policy**

26.    Prior to October 1, 2013, an inpatient in the Medicare program included a patient "formally admitted as inpatient with the expectation that he or she will remain at least overnight and occupy a bed even though it later develops that the patient can be discharged or transferred to another hospital and not actually use a hospital bed overnight." Medicare Benefit Policy Manual (CMS Pub. 100-02), Chapter 1 § 10. The decision to admit a patient as an inpatient was described a "complex medical judgment" that is made by the physician. *Id.*

27.     During FFY 2014 rulemaking, CMS opted to develop a new, narrower standard

for inpatient and outpatient admissions and the prospective payment system rates for those

services. 78 Fed. Reg. at 50938-52, 50965.  The new rule established that inpatient admissions

paid under Medicare Part A would be appropriate only when the Medicare beneficiaries' stays in

the hospital crossed two midnights, thus, this became known as CMS' "Two-Midnight Policy."

78 Fed. Reg. at 50944-49; 42 CFR § 412.3(e)(1). Inversely, the new rule established that any

hospital services spanning less than two midnights would be considered outpatient services paid

under Medicare Part B, except under certain specific circumstances. 78 Fed. Reg. at 50946; 42

C.F.R. § 412.3(e)(1).

28.     Despite the fact that the Secretary narrowed the definition of covered inpatient

hospital services to require at least two overnight stays in the hospital instead of the one

overnight stay that had been previously required, the Secretary estimated that there would be a

"net increase in hospital inpatient encounters." 78 Fed. Reg. at 50952. Specifically, the

Secretary's proposed rule stated that CMS' actuaries estimated that the new policy would shift

400,000 encounters from outpatient to inpatient, and 360,000 encounters from inpatient to

outpatient. 78 Fed. Reg. 27486, 27649 (May 10, 2013). CMS actuaries purportedly estimated a

net shift increase of 40,000 inpatient admissions, resulting in an increased cost to the Medicare

program of $220 million. *Id.*

29.     The Secretary proposed reducing Medicare inpatient hospital payment rates by

0.2% to "offset" the purported payment increase that CMS estimated for increased covered

inpatient hospital stays. This rate reduction, which the Secretary incorrectly asserts is authorized

by the "exceptions and adjustments authority" under 42 U.S.C. § 1395ww(d)(5)(I)(i), was to

2697.013-2065558.1

apply universally to the standardized amount and to the hospital-specific rates for all IPPS hospitals.

30.     The Secretary's proposed rule resulted in the submission of more than 630 comments from interested parties. The commenters opposed the reduction, disputed the Secretary's findings, and discussed the fact that CMS refused to release necessary actuarial data to substantiate its conclusions. Some commenters pointed to their own calculations and findings showing that the Secretary should have reached the opposite conclusion:  that the Two-Midnight Policy would result in a net increase in outpatient hospital stays. Because the Medicare program pays hospitals far less for services billed as outpatient observation than it pays for the same services provided for inpatients, a net increase in outpatient hospital stays would obviously result in a net decrease in payment to providers.

31.     Despite the opposition the Secretary received from commenters on the proposed rule and the complaints it received from commenters that CMS did not provide proper actuarial data and methodologies for the rationale behind the rule, the Secretary adopted the 0.2% rate reduction in the final rule. 78 Fed. Reg. at 50952-54. CMS dismissed the comments and declined to address them or to provide any substantial data, calculations, nor methodologies for its conclusions. CMS's only explanation was that its actuaries examined two different categories of services when it conducted its comparisons. In evaluating how many encounters might shift from outpatient to inpatient under the new rule, CMS looked to outpatient claims for observation and major procedures; however, in evaluating how many encounters might shift from inpatient to outpatient under the new rule, CMS looked to inpatient claims with a surgical DRG. 78 Fed. Reg. at 50953.  CMS has never provided any specific data or information to support its conclusions pertaining to the Two-Midnight Policy.

2697.013-2065558.1

32.     Since CMS adopted the Two-Midnight Policy, confusion over the rule has been widespread, and CMS has issued numerous "clarifications" through alerts, bulletins, forums and other guidance. Despite its knowledge of hospitals' issues with the Two-Midnight Policy, CMS issued a FFY 2015 IPPS Proposed Rule that did not eliminate or address the 0.2% reduction of the Two-Midnight Policy. 79 Fed. Reg. 27,978 (May 15, 2014). Again, commenters on the FFY 2015 IPPS Proposed Rule requested CMS to provide support and explanation for its proposed reduction.

33.     The Secretary did not eliminate or address any questions and issues raised by commenters regarding the 0.2% reduction in its FFY 2015 IPPS Final Rule. 79 Fed. Reg. 50,381-83. Thus, the Two-Midnight Policy and its 0.2% reduction carried forward to the FFY 2015 IPPS rates. *Cape Cod Hosp.*, 630 F.3d at 213-14. Providers challenge the FFY 2015 IPPS Final Rule with this action and ask the Court to declare the 0.2% reduction to be invalid; to set aside the portion of the FFY 2015 IPPS Final Rule that sets forth the 0.2% reduction; and to order to Secretary to ensure that CMS make FFY 2015 and future IPPS payments to Providers that do not include application of the 0.2% reduction.

34.     Recently, this Court ruled in a related consolidated action challenging the Secretary's 0.2% reduction for FFY 2014 that the Secretary's rulemaking procedure for the reduction was substantively flawed and had violated the APA. *Shands Jacksonville Medical Center v. Burwell*, No. 14-cv-00263, Mem. Op. at 33 (D.D.C. Sept. 21, 2015). This Court held that the Secretary had not given the public proper opportunity to provide meaningful notice and comment on the 0.2% reduction because CMS had not timely provided the public with critical information to support its methodology for calculating the purported expected net increase in the number of inpatient admissions. This Court remanded the FFY 2014 rulemaking to CMS and

2697.013-2065558.1

ordered that the Secretary: (1) publish a notice in the Federal Register by December 1, 2015; (2) afford interested parties an opportunity to submit comments regarding this notice on or before February 2, 2016; (3) further publish notice in the Federal Register by March 18, 2016. *Shands*, Order at 2 (D.D.C. Oct. 6, 2015). The Court also ordered that if the Secretary issued a notice of proposed rulemaking and notice of the final rule on remand, that the notice of proposed rulemaking be published by December 16, 2015, and that interested parties be afforded an opportunity to comment before February 17, 2016, with further notice being published in the Federal Register by April 18, 2016. *Id.* at 2-3.

## PROCEDURAL HISTORY

35.     Each of the plaintiff hospitals in this action (collectively "Plaintiffs") all filed timely appeals for the fiscal year at issue with the PRRB and eventually those appeals were consolidated into six separate group appeals (PRRB Case Nos. 15-1473GC; 15-1474GC; 15-1475GC; 15-1476GC; 15-1477GC; 15-1478G).

36.     This case consolidates those six separate PRRB group appeals challenging the 0.2% rate reduction. The total amount of disputed reimbursement for the Plaintiffs is estimated to be about $4,040,293.

37.     Because the PRRB had jurisdiction over the appeals but lacked the authority to review whether the 0.2% rate reduction to IPPS is lawful, the PRRB on its own motion granted expedited judicial review to Plaintiffs.

38.     By letter dated December 8, 2015, and received by Plaintiffs on December 14, 2015, the PRRB notified Plaintiffs of its decision. A true and correct copy of this letter is attached to this Complaint as Exhibit A.

2697.013-2065558.1

## STANDARD OF REVIEW AND ASSIGNMENTS OF ERROR

### A.  Two-Midnight Policy Violates The APA And The Medicare Act

39.     Sections 1878(a) and (f) of the Act, 42 U.S.C. § 1395oo(a), (f), provide for review of the PRRB's decisions below and the Secretary's determination of the IPPS payment rates at issue pursuant to the applicable provisions of the Administrative Procedure Act ("APA").  The applicable provisions of the APA require a reviewing court to set aside agency action that is found to be contrary to law, arbitrary, capricious, unsupported by substantial evidence, in excess of statutory authority or otherwise not in accordance with law.  5 U.S.C. § 706.

40.     The APA dictates rulemaking procedural requirements and specifically requires that agencies provide notice of proposed rulemaking, afford interested parties a chance to comment on the proposed rulemaking, and consider the matters presented by the commenters. 5 U.S.C. § 553.

41.     Plaintiffs assert that the Secretary's payment rate reduction under the Two-Midnight Policy should be declared invalid and vacated because it is contrary to law, arbitrary, capricious, unsupported by substantial evidence, was established in excess of statutory authority, and is not in accordance with Medicare law.

### B.  The Secretary Lacked Authority Under Medicare Law To Implement Rule

42.     The Medicare Act does not authorize the Secretary to impose the 0.2% rate reduction, and her decision to impose such a reduction exceeds her statutory and regulatory authority.

43.     The Medicare Act and its regulations provide precise reimbursement methodologies for calculating the standardized amount for operating costs, the hospital-specific rates for sole community and Medicare-dependent hospitals, and the Federal rate for capital

2697.013-2065558.1

costs. 42 U.S.C. §§ 1395ww(d)(1), (3) 5)(D)and (5)(G), and 42 C.F.R. §§ 412.308(c)(1)(ii) and

412.312(b)(3). Those specific provisions do not allow for the Secretary to impose an across-the-

board 0.2% inpatient payment reduction to all inpatient claims. As such, the reduction runs afoul

of the law's mandatory provisions, contravenes the language and intent of the law, and exceeds

the Secretary's authority to adopt additional adjustments and exceptions under 42 U.S.C. §

1395ww(d)(5)(I).

44.     Moreover, the exceptions and adjustments provisions of 42 U.S.C. §§

1395ww(d)(5)(I), which the Secretary asserts authorize her actions, do not allow for the 0.2%

rate reduction either. The language, structure and intent of the statute as a whole make clear that

it does not give broad authority to the Secretary to make payment rate reductions across the

board to all hospitals.

45.     The preceding clauses of 42 U.S.C. § 1395ww(d)(5) identify specific and limited

adjustments and exceptions that are to be applied in very specific and narrow circumstances,

such that would apply to discrete types of hospitals.  The types of adjustments and exceptions

discussed in the preceding clauses of Section 1395ww(d)(5) would not include universal rate

reductions like the 0.2% rate reduction established through the Two-Midnight Policy. As the

statutory language providing the Secretary with authority to make adjustments and exceptions

under Section 1395ww(d)(5)(I) cannot and should not be interpreted except within the context of

the statute as a whole, the scope of the Secretary's authority under that section should be

interpreted in a manner is consistent with its preceding clauses. *See Circuit City Stores, Inc. v.*

*Adams*, 532 U.S. 105, 114-15 (2001), citing 2A N. Singer, Sutherland on Statutes and Statutory

Construction § 47.17 (1991) (discussing "*ejusdem generis*,"a statutory canon that establishes that

"[w]here general words follow specific words in a statutory enumeration, the general words are

construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words").  Taken as a whole, the statute does not give the Secretary authority for such a broad, sweeping rate adjustment like the 0.2% rate reduction she implemented.

**C.  The Secretary's Actions Violate Alleged Adjustments And Exceptions Authority Under Medicare Law**

46.      Furthermore, even assuming *arguendo* that the Secretary has the authority for the 0.2% rate reduction, the reduction was implemented in a way that violates statutory requirements.

47.      The adjustments and exceptions authority of Section 1395ww(d)(5)(I) requires that adjustments made under that authority be "provide[d] by regulation." The Secretary did not promulgate a regulation to impose the 0.2% rate reduction and instead applied it as a rate adjustment in the preamble to the final rule. The Medicare Act further requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard government . . . the payment for service . . . shall take effect unless it is promulgated by the Secretary by regulation." 42 U.S.C. §1395hh(a). Again, the Secretary failed to promulgate any regulation pertaining to the 0.2% rate reduction, despite the fact that the reduction changes a substantive government payment for service.

**D.  The Secretary's Actions Are Arbitrary and Capricious and Inconsistent with Law**

48.      The Secretary's payment reduction is arbitrary and capricious as it is not based on substantial evidence and is otherwise inconsistent with law.

49.      The Secretary's universal rate reduction is wildly and inexplicably different from the Secretary's prior application of the adjustments and exceptions authority under 42 U.S.C. § 1395ww(d)(5)(I), yet the Secretary offered no explanation for this sudden departure from established policy and interpretation of statutory authority. The Secretary's previous

interpretation of the statute was far more limited, and the Secretary had never applied the

statutory provision to allow for across-the-board payment rate reductions to all hospitals for

operating and capital costs and hospital-specific rates.

50.     Furthermore, the Secretary failed to provide any meaningful evidence or even a

logical explanation for the conclusion that the Two-Midnight Policy, which significantly

narrowed the definition of allowable inpatient costs, would result in a purported increase in

payment to providers for inpatient services.  To make matters worse, the Secretary also failed to

provide any meaningful evidence or grounds for why the 0.2% rate reduction would be necessary

once the policy was implemented.

51.     Even if the Two-Midnight Rule resulted in a purported increase in inpatient stays,

the expected existence of such an increase does not reasonably justify an across-the-board

reduction in prospective rates per discharge. The alleged expected increase in inpatient stays

would be for medically necessary, covered services provided to beneficiaries; and yet, the rate

reduction would effectively leave providers uncompensated those services. It is arbitrary and

capricious for the Secretary to establish a policy that calls for providers to be underpaid.

52.     Despite several chances to do so since promulgating the Two-Midnight Policy,

the Secretary failed to offer adequate and in some cases any, data, methodologies, assumptions

or calculations that led to the decision that the 0.2% rate reduction was warranted. Many

commenters to the proposed rule mentioned the lack of data and explanations and asked for more

explanation for the Secretary's findings and conclusions. However, the Secretary never

adequately addressed these questions before issuing the final rule, which violates her obligations

under the law. See *Motor Vehicles Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual*

*Auto Ins. Co.*, 463 U.S. 29, 43 (1983), quoting *Burlington Truck Lines v. U.S.*, 371 U.S. 156, 168

(1962) (discussing that an agency "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between facts found and the choice made.'"). Thus, the Secretary's creation of the 0.2% rate reduction is arbitrary and capricious and should be vacated.

53.     Moreover, it is well established in this Court that the purpose of a comment period is to "allow interested members of the public to communication information, concerns, and criticisms to the agency during the rule-making process. If the notice of proposed rule-making fails to provide an accurate picture of the reasoning that has led the agency to the proposed rule, interested parties will not be able to comment meaningfully upon the agency's proposals." *Connecticut Light and Power Co. v. Nuclear Regulatory Commission*, 673 F.2d 525, 530 (D.C. 1982). This Court has held that "[t]o allow an agency to play hunt the peanut with technical information, hiding or disguising the information that it employs, is to condone a practice in which the agency treats what should be a genuine interchange as mere bureaucratic sport." *Id.*

54.     The Secretary failed to provide data, actuary studies, calculations, or the basis for findings in proposing the Two-Midnight Policy and the conclusions about increases in IPPS expenditures related to it. In effect, the Secretary failed to provide meaningful notice to those affected by the rule and denied interested parties the statutory right to provide meaningful comments about the proposed rate reduction. Interested parties could not effectively comment upon the Secretary's proposed rule because it did not have the tools and data and information it needed to evaluate it and respond to it. Allowing the Secretary to establish a rule without revealing the technical basis for that rule constitutes "serious procedural error" under the law. *Id.*

2697.013-2065558.1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

55.     For an Order by this Court

    a.  declaring invalid the provisions of the final rule that reduced the standardized amount and hospital-specific rates for operating costs and the Federal rate for capital-related costs of inpatient hospital services;

    b.  vacating the provisions of the final rule that reduced the standardized amount and hospital-specific rates for operating costs and the Federal rate for capital-related costs of inpatient hospital services;

    c.  directing the Secretary to correct the standardized amount and hospital-specific rates for operating costs and the Federal rate for capital-related costs of inpatient services;

    d.  directing the Secretary to order Plaintiffs' MACs to pay the Plaintiffs the additional amounts owed for all Federal fiscal year 2015 IPPS payments, including interest owed in accordance with 42 U.S.C. § 1395oo(f)(2);

    e.  directing the Secretary for pay Plaintiffs for legal fees and other costs of suit; and

    f.  providing for such other and further relief as the Court deems appropriate.


Dated: February 5, 2016        By:_____/s/_____
                            Robert J. Spagnoletti (DC #446462)
                            Schertler & Onorato, LLP
                            575 – 7th Street, N.W., Suite 300 South
                            Washington, DC  20004
                            Telephone: 202-628-4199
                            Facsimile:  202-628-4177
                            rspagnoletti@schertlerlaw.com

                            *Counsel for Plaintiffs*

2697.013-2065558.1